UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARY GRACE LADIORAY,<br>Plaintiff,<br>v.<br>LONGS DRUG STORES CALIFORNIA, L.L.C., et al.,<br>Defendants. | Case No. 26-cv-04617-RFL<br>**ORDER DENYING MOTION TO REMAND, GRANTING MOTION TO COMPEL ARBITRATION, AND STAYING CASE**<br>Re: Dkt. Nos. 7, 11 |

Plaintiff Mary Grace Ladioray filed this action in the Alameda County Superior Court alleging five violations of the California Fair Employment and Housing Act, along with wrongful termination, negligent hiring, supervision and/or retention, and intentional infliction of emotional distress ("IIED") related to her employment and termination at a CVS Pharmacy. (Dkt. No. 1-1.) Ladioray asserts all of her claims against Defendants Longs Drug Stores California, CVS Pharmacy, Inc., CVS Health Solutions, LLC (together ("CVS Defendants") and asserts her IIED claim only against her alleged supervisors Austin Huang and Dale Larson. (*Id.*)[1] CVS Defendants removed the action on the basis of diversity jurisdiction, 28 U.S.C. § 1332(a). (Dkt. No. 1.) CVS Defendants acknowledge that Huang and Larson are citizens of California and therefore are not diverse to Ladioray, who is also a citizen of California, but argue that Huang and Larson are fraudulently joined. (*Id.* ¶¶ 31–48.) Plaintiff has moved to remand. (Dkt. No. 11.) Defendants move to compel arbitration. (Dkt. No. 7.) For the reasons explained

[1] There is no indication on the docket in this action that Defendants Huang and Larson have been served with the Complaint, and they have not appeared.

below, the Motion to Remand is **DENIED** and the Motion to Compel Arbitration is **GRANTED**. This order assumes the reader is familiar with the facts of the case, the applicable legal standards, and the arguments made by the parties.

### A. Motion to Remand

Defendants have shown that the amount in controversy requirement is met and that there is diversity between CVS Defendants and Ladioray. (Dkt. No. 1.) The only issue in dispute is whether the citizenship of Huang and Larson may be disregarded because Ladioray would be unable to establish her "cause of action against the non-diverse part[ies] in state court." *Grancare, LLC v. Thrower ex rel. Mills*, 889 F.3d 543, 548 (9th Cir. 2018). Defendants bear "a particularly heavy burden" in succeeding on the argument, and "[t]he action must be remanded if there is *any possibility* that a state court would find that [Ladioray] stated a cause of action" against Huang and Larson. *See Richardson v. Costco Wholesale Corp.*, No. 25-cv-08640-RFL, 2025 WL 3546592, at *1 (N.D. Cal. Dec. 11, 2025) (citation omitted).

To state an IIED claim, Ladioray must allege, among other elements, that Huang and Larson engaged in "extreme and outrageous conduct." *See Hughes v. Pair*, 209 P.3d 963, 976 (Cal. 2009) (citations omitted). Outrageous conduct is "so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Id.* (citation omitted). Ladioray alleges that Huang, while acting as her supervisor, instructed her "to continue working by taking Advil and wearing a back support belt" after she injured her back at work, and that he did not report her injury to CVS for over a month. (Dkt. No. 1-1 ¶¶ 22–23.) Ladioray alleges that Larson informed her that "CVS could not identify any reasonable accommodation that would allow [her] to continue working for CVS," and told her that she was terminated. (*Id.* ¶ 29.) This alleged "personnel management activity is insufficient to support a claim of intentional infliction of emotional distress, even if improper motivation is alleged." *See Janken v. GM Hughes Elecs.*, 46 Cal. App. 4th 55, 59 (Ct. App. 1996).

Ladioray identifies cases where courts have found that a work supervisor's conduct outside of the scope of properly delegated management authority, such as deceptive conduct,

could plausibly give rise to an IIED claim. (Dkt. No. 11 at 16–19);[2] *see also Webber v. Nike USA, Inc.*, No. 12-cv-00974, 2012 WL 4845549, at *4 (S.D. Cal. Oct. 9, 2012) (collecting cases). However, no such extreme and outrageous conduct is at issue in the Complaint, nor does Ladioray describe any specific allegations that she could add through amendment. (Dkt. No. 16 at 8 (on reply, stating generally that "further amendment could provide additional detail regarding the frequency, audience, context, falsity, discriminatory purpose, and effects of the Individual Defendants' conduct."). Because there is no possibility that a state court would find that Ladioray stated a cause of action, the motion to remand and associated request for attorneys' fees is denied. *Wu v. Shopify (USA) Inc.*, No. 25-cv-05960-RFL, 2025 WL 2837766, at *2 (N.D. Cal. Oct. 7, 2025).[3]

### B. Motion to Compel Arbitration

Defendants seek to compel Ladioray to arbitrate her claims. (Dkt. No. 7.) They introduce evidence that on March 23, 2018, Ladioray completed a training course, using her unique credentials and password, which required her to (1) click into the CVS Health Colleague Guide to Arbitration and the Arbitration Policy, and (2) electronically sign an acknowledgement that she would be covered by the Arbitration Policy unless she opted out within 30 days. (Dkt. No. 7-12 ¶¶ 5–7; Dkt. No. 7-16 ¶¶ 4, 6, 9, 12; Dkt. No. 7-13; Dkt. No. 7-14; Dkt. No. 7-18 at 13; Dkt. No. 13-1 ¶ 9.) Ladioray did not opt out. (Dkt. No. 7-20 ¶¶ 5–6.) The Arbitration Policy contains an agreement to arbitrate:

> any and all legal claims, disputes or controversies . . . an Employee may have, now or in the future, against CVS Health, its parents, subsidiaries, successors or affiliates, or one of its employees or agents, arising out of or related to the Employee's employment with CVS Health or the termination of the Employee's employment.

(Dkt. No. 7-13 § 2.) Ladioray challenges the applicability of the Federal Arbitration Act ("FAA") to the agreement, the existence of any agreement to arbitrate, and raises procedural and

---

[2] Citations to page numbers refer to ECF pagination.

[3] This order does not reach Defendants' argument regarding the California Workers' Compensation Act.

substantive unconscionability arguments. The arguments are addressed below.

***Applicability of the FAA***. As a threshold matter, Ladioray argues that the FAA does not govern this dispute because Defendants cannot establish that *her* employment "involved interstate commerce." (Dkt. No. 10 at 21–22.) The arbitration agreement is subject to the FAA because CVS is engaged in interstate commerce. *See Martinez-Gonzalez v. Elkhorn Packing Co., LLC*, 635 F. Supp. 3d 883, 890–91 (N.D. Cal. 2022) ("Defendants are engaged in interstate commerce; accordingly, Plaintiffs' employment with Defendants—to which the arbitration agreements apply—affects commerce within the meaning of the FAA."); (Dkt. No. 7-21.)

***Formation of an Agreement to Arbitrate***. Ladioray has submitted a declaration in opposition to the motion to compel arbitration stating "I do not recall ever seeing or receiving" the CVS Health Colleague Guide to Arbitration and Arbitration Policy "from the CVS Defendants. I do not recall ever signing or executing any of these documents." (Dkt. No. 10-4 ¶ 6; *see also* ¶ 8 (same).) However, Ladioray's lack of recollection of reviewing and signing the documents at issue does not create a material dispute of fact as to formation in light of Defendants' contemporaneously generated business records reflecting Ladioray's acknowledgment and agreement to be bound by the arbitration policy if she did not opt out by the deadline. *See FEC v. Toledano*, 317 F.3d at 939, 950 (9th Cir. 2002) ("[F]ailure to remember and lack of knowledge are not sufficient to create a genuine dispute."). Ladioray does not expressly deny agreeing to the arbitration agreement. Ladioray also faults Defendants for failing to produce a signed agreement. It is undisputed that Defendants' system did not generate such a record. Instead, the authenticated training log (Dkt. No. 7-18) in combination with sworn declarations from individuals with knowledge explaining that training could only be accessed using unique employee credentials and that completion of the training required confirming the acknowledgment (Dkt. No. 7-16 ¶¶ 4, 6, 9, 12), is sufficient to show Ladioray's assent.

Alternatively, Ladioray argues that there was no formation because she never agreed to conduct the transaction by electronic means. (Dkt. 10 at 12–13.) "[W]hether the parties agree to conduct a transaction by electronic means is determined from the context and surrounding

circumstances." *J.B.B. Investment Partners Ltd. v. Fair*, 182 Cal. Rptr. 3d 154, 164 (2014) (citation omitted). It is undisputed that Ladioray was informed "that my click of the 'Yes' button creates an electronic signature that is legally binding." (Dkt. No. 7-14 at 6.) Ladioray's lack of recollection of assenting does not create a material dispute of fact. (Dkt. No. 10-4 ¶ 16.) Given this context, there is no material dispute that Ladioray consented to the electronic transaction.

***Delegation Clause***. Ladioray argues that if an "arbitration agreement exists, it is unenforceable because it is both procedurally and substantively unconscionable under California law." (Dkt. No. 10 at 15–21.) However, the Court cannot reach these arguments because the agreement incorporates the American Arbitration Association ("AAA") Employment Arbitration Rules, which include a clear and unmistakable delegation provision requiring arbitrability to be determined by the arbitrator. (Dkt. No. 7-13 § 4(c); Dkt. No. 7-4, Rule 7(a) ("The arbitrator shall have the power to rule on their own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or the arbitrability of any claim or counterclaim."); *see also Brennan v. Opus Bank*, 796 F.3d 1125, 1131 (9th Cir. 2015) (incorporation of AAA rules into an arbitration provision of an employment contract showed a "clear and unmistakable intent to delegate arbitrability to an arbitrator."). Ladioray does not dispute the applicability of the delegation clause, other than to argue that no agreement has been formed. (Dkt. No. 10 at 11–12.) This argument has already been addressed above. Nor does Ladioray "explain how those provisions" that she challenges as unconscionable "make *the fact of an arbitrator deciding arbitrability unconscionable*," as she "must" argue if she wishes to challenge the enforceability of the delegation clause itself. *Holley-Gallegly v. TA Operating, LLC*, 74 F.4th 997, 1002 (9th Cir. 2023). Accordingly, her remaining arguments are reserved for the arbitrator.

### C. Conclusion

For the reasons explained above, the Motion to Remand is **DENIED**, the Motion to Compel Arbitration is **GRANTED**, and the case is **STAYED** pending resolution of the arbitration proceedings. The parties shall file a joint status report every 180 days to update the Court on the

arbitration proceedings and shall file a status report within 14 days of the completion of arbitration proceedings. The parties' first status report is due by **March 2, 2027**.

**IT IS SO ORDERED.**

Dated: September 3, 2026

RITA F. LIN
United States District Judge